DELLENBACH, Appellant,

v.

ROBINSON et al., Appellees.

[Cite as *Dellenbach v. Robinson* (1993), 95 Ohio App.3d 358.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–884.

Decided April 27, 1993.

*John W. Leibold,* for appellant.

*Jacobson, Maynard, Tuschman & Kalur, Patrick F. Smith* and *Karen L. Clouse,* for appellee Raymond Robinson, M.D.

*Baker & Hostetler, Bradley Hummel* and *David C. Levine,* for appellee Grant Medical Center.

WHITESIDE, Judge.

Plaintiff-appellant, Crystal A. Dellenbach ("plaintiff"), appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees and raises the following assignments of error:

"I. The trial court erred to the prejudice of plaintiff-appellant by not submitting the interrogatories to the jury together with the verdict forms, in violation of Ohio Civil Rule 49(B).

"II. The trial court erred to the prejudice of plaintiff-appellant by permitting the defendant to call and take testimony from witnesses in violation of the previous order of court requiring the defendant to identify all witnesses by January 15, 1992, and in violation of Civil Rule 26(E)(1)(b), Civil Rule 37, and Common Pleas Rule 43.

"III. The trial court erred to the prejudice of plaintiff-appellant by permitting the defendant Grant Medical Center to use the records of Children's Hospital Guidance Center in cross-examination of the plaintiff-appellant without producing the record custodian and without identifying the source and nature of the records, in violation of Ohio Revised Code Sections 2317.40 and 2317.422, and Civil Rule 45(B).

"IV. The trial court erred to the prejudice of plaintiff-appellant in permitting counsel for the defendant Raymond Robinson, M.D., to present argument to the jury as part of voir dire examination.

"V. The trial court erred to the prejudice of plaintiff-appellant in refusing to permit plaintiff-appellant's medical expert, Dr. Bradley Busacco, from testifying as to a causal connection between plaintiff-appellant's C-section, the dehiscence, the evisceration and the subsequent development of adhesions for which the laparotomy and repair surgery [were] required.

"VI. The trial court erred to the prejudice of plaintiff-appellant in permitting the admission of the summary of prescriptions obtained by plaintiff when the records that created the basis for the summary report were not made available before trial to the plaintiff, in violation of Evidence Rule 1006, and Ohio Revised Code Sections 2317.36 and 2317.38.

"VII. The trial court erred to the prejudice of plaintiff-appellant when it deprived plaintiff-appellant of due process of law in violation of the Ohio and

United States Constitution by granting privileges to Grant Medical Center to shield peer review reports relating to Dr. Robinson and investigative reports relating to the evisceration incident in accordance with Ohio Revised Code Sections 2305.24 and 2305.251, while at the same time the trial court permitted inquiry by defense counsel into plaintiff-appellant's life back to early childhood.

"VIII. The trial court erred to the prejudice of plaintiff-appellant when it permitted defendant-appellees to question Crystal Dellenbach about payment of her medical bills by MedPlan, which served no purpose but to prejudice the jury against the plaintiff-appellant and to attack her credibility.

"IX. The rulings of the trial court in permitting the defendant-appellees to advantageously employ delay in producing discovery, in utilizing surprise in the presentation of witnesses and exhibits, and in permitting the questioning of witnesses about irrelevant matters designed only to denigrate the plaintiff-appellant and prejudice the minds of the jury against the plaintiff, [are] so contrary to the letter and spirit of the Civil Rules and the evidentiary rules that [they] operated to deny the plaintiff-appellant of a fair trial, contrary to the Ohio and United States Constitutions."

Plaintiff filed her complaint alleging medical negligence against Raymond Robinson, M.D.[1]; Grant Medical Center ("Grant"); John Doe, the manufacturer of the suture material; and Jane Doe, a nurse aide. An amended complaint was later filed to identify the manufacturer and the nurse aide; however, both were dismissed as parties before the trial was completed. The trial concluded with a jury verdict in favor of both defendants.

The dispute arose as a result of treatment plaintiff received in connection with her second pregnancy. Defendant Robinson performed a caesarian section ("C-section"), at Grant Hospital on March 1, 1990. The plaintiff was discharged on March 5, 1990. Her parents took her from the hospital to their home. Shortly after arriving at her parents' home, she discovered that her incision had opened and she returned to Grant Hospital. The emergency room personnel confirmed that the incision had opened (a dehiscence) and fat tissue was emanating. Plaintiff was admitted and taken to a patient room. While there, she needed to use the bathroom. Testimony conflicted over whether plaintiff was told to walk to the bathroom by nursing personnel or was helped to the bathroom by nursing personnel, or went on her own. However, plaintiff did walk to the bathroom in her room. While there, her incision opened more, and a portion of her intestines came through the opening (an evisceration). Later that evening, plaintiff had

---

1. Defendant-appellee Robinson's brief does not conform with App.R. 19 since it is written in a typeface much smaller than the required 12 point (or 10 pitch), point being measured by the height of the typeface ($\frac{1}{72}$ inch), and pitch by the number of letters in a linear inch.

approximately eighteen inches of small bowel protruding through the incision. Defendant Robinson surgically repaired the dehiscence and evisceration. Plaintiff was discharged on March 11, 1990. Thereafter, plaintiff complained of back pain, headaches and emotional injury. On September 21, 1990, plaintiff had surgery to remove adhesions from her abdomen. The complaint was filed on December 20, 1990.

By her first assignment of error, plaintiff contends that the trial court erred by not submitting the interrogatories to the jury together with the verdict forms, in violation of Civ.R. 49(B) which provides in part:

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. * * * The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves."

In this case, the trial court did not give the jury the verdict forms but, instead, informed the jury that, if a verdict for plaintiff was returned, the jury would have to then answer interrogatories. Thus, the trial court attempted to bifurcate submission of the case. However, Civ.R. 42(B) provides for bifurcation of a case for trial, not bifurcation of submission to the jury after trial. Liability issues may be separated from damage issues for trial. Under Civ.R. 42(B), there is no bifurcation provision for submitting issues to the jury after they are tried together. As discussed, *infra,* R.C. 2315.19 requires submission of interrogatories with the general verdict form in a comparative negligence case.

Ordinarily, it is error for a trial court not to submit the interrogatories at the same time as the general verdict, especially those mandated by R.C. 2315.19. Before beginning the jury instructions, the court and counsel discussed the appropriate verdict and interrogatory forms. The court stated, "I can give them final verdict form or we can do it in interrogatory form, let them come back with the interrogatories and then hand them the appropriate verdict for them to sign. I will do it either way you all agree." Counsel for plaintiff stated, "I think interrogatories, they must know in advance that they are going to have to affix damages, that should clearly be in their minds." In this way, although not an express objection to the format suggested by the trial court, plaintiff's counsel clearly advised the court that the jury should be advised they are to affix damages at the time they deliberate.

Again, during the charge, the trial court stated that it would give the interrogatory forms to the jury separately from the verdict forms. The court instructed the jury:

"If you find—and I want you to remember this when you are going through your deliberation process. If you are going to find in favor of the plaintiff, you are to award that amount of damages that you determine from all the evidence that has been proved to you by a preponderance of the evidence; * * *

"Now, you are going to have just a singular verdict form right now dealing with that question. The verdict form is going to ask you to put a singular dollar value if you would find for the plaintiff. *However, if you do make that finding, I just want to caution you that you are going to come back later on and tell us how you arrived at that figure. So make sure when you put down that figure, that you are going to have some questions, which are called interrogatories, we are going to ask you.* Okay, if you awarded this, what part of the amount would be for the hospital expenses, what part for certain things. So, remember, if you do get to that point in time, you come out, we look at the verdict and *we are going to send you back in with some interrogatories if that is necessary.* * * *" (Emphasis added.)

At the conclusion of the charge, the trial court asked for "[a]ny additions, or corrections or deletions to the charge?" Plaintiff's counsel then requested that the court use several of the proposed instructions he had given the court but did not again express objection to the form of the interrogatories and the verdict forms. The court then gave some additional instructions to the jury including:

"So I do want to caution you, again, when you do come up with verdicts, if you have decided that one or more of the defendants has been negligent and that negligence has caused some injury, we are going to come back with some interrogatories for you to ask you a little bit about the dollar figure. So you keep that in mind."

Again, there was no objection by plaintiff's counsel. Defendants argue that plaintiff waived this error since Civ.R. 51 requires that a party make an objection to any instruction, or the error is not preserved for appeal. The rule provides in part:

"[A] party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."

However, the trial court did not give plaintiff's counsel an opportunity to object after the second set of instructions. Moreover, the trial court is statutorily mandated to submit the interrogatories with the verdict forms to the jury by R.C. 2315.19(B), which provides in pertinent part:

"If contributory negligence or implied assumption of the risk is asserted and established as an affirmative defense to a negligence claim * * * *the jury in a*

*jury action shall return a general verdict accompanied by answers to interrogatories[.]"* (Emphasis added.)

In this case, both defendants asserted the affirmative defense of contributory negligence, which is merged with comparative negligence under R.C. 2315.19(A). Accordingly, R.C. 2315.19(B) was applicable. The trial court was required to submit the interrogatories to the jury with the verdict form and also should have given counsel an opportunity to object to the second set of instructions.

However, plaintiff has not demonstrated that prejudice resulted from this error. Although it could be argued that the jury wanted to reach a verdict in a hurry, and the idea of reaching a verdict and then having to answer interrogatories forced them to reach a defense verdict, the argument is without foundation. The deliberations began on a Friday afternoon at 2:45 p.m., and the trial court had already mentioned to the attorneys that the jury did not want to return on Monday. However, the trial court had previously instructed the jury that it did not want them to feel rushed and had inquired as to whether any jury member could not return on Monday. No member stated he or she could not return on Monday. There is no suggestion that the jury returned a defense verdict merely to avoid spending more time in deliberations. Regularity, rather than irregularity, in jury deliberations will be presumed in the absence of the record's affirmatively showing irregularity. A verdict against a party standing alone is not evidence of prejudice resulting from error. Therefore, plaintiff's first assignment of error is not well taken.

By her second assignment of error, plaintiff contends that the trial court erred by permitting the defendants to call and present testimony from witnesses which were not identified in discovery. Since other assignments of error have been sustained, this assignment is moot because the witnesses are now identified for the later trial. App.R. 12 requires an appellate court to decide each assignment of error and give reasons in writing unless an assignment is made moot by a ruling on another assignment of error. As such, plaintiff's second assignment of error is moot.

By her third assignment of error, plaintiff contends that the trial court erred by permitting defendant Grant to use the records of Children's Hospital Guidance Center in cross-examination of the plaintiff. Plaintiff argues that the records could not be used since the records custodian did not identify the source and nature of the records, nor were they certified copies. Moreover, plaintiff argues that the records were privileged pursuant to R.C. 2317.02 and, therefore, should not have been discussed. Defendant Grant argues that the records were properly used since they were used only to refresh plaintiff's recollection during cross-examination and were not admitted as evidence. Additionally, defendant argues that the records were not privileged since the privilege applies only to

communications made to a treating physician, and no such communication was disclosed and, also, that any privilege applicable would have been waived pursuant to R.C. 2317.02(B)(1)(c).

■ Plaintiff's first argument is that the records could not be used at trial without the records custodian testifying to identify the records without violating R.C. 2317.40 [2] and 2317.422.[3] Both of these sections of the Revised Code are requirements as to admissibility of records. Plaintiff's counsel continually objected to the use of these records. There was no effort by defendants to authenticate the records. In fact, one cannot discern from looking at the records themselves that they are from Children's Hospital Guidance Center since they are not so marked. Records cannot be used during trial unless properly authenticated.

Additionally, plaintiff argues that Civ.R. 45(B) was violated. It provides in part:

"A subpoena may also command the person to whom it is directed to produce the books, papers, documents or tangible things designated therein[.]"

This rule requires the person to appear and bring the requested items. Plaintiff argues that defendant Grant obtained such a subpoena to require the Children's Hospital Guidance Center records custodian to appear and bring the records. However, the custodian did not testify. There was no attempt to authenticate the records since the custodian did not testify, the copies were not certified, and the parties did not stipulate to the authenticity. Since defendant used the records during trial, they needed first to be authenticated, by the records custodian's testimony or some other appropriate manner since the copies were neither certified nor stipulated.

■ Defendant Grant did not introduce the records into evidence. Instead, they were used to "refresh plaintiff's recollection" on cross-examination pursuant to Evid.R. 612 which provides in part:

"[I]f a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying[.]"

---

**2.** R.C. 2317.40 provides in pertinent part:

"A record of an act, condition, or event, in so far as relevant, is competent evidence *if the custodian* or the person who made such record or under whose supervision such record was made *testifies to its identity* and the mode of its preparation[.]" (Emphasis added.)

**3.** R.C. 2317.422 provides in pertinent part:

"Notwithstanding sections 2317.40 and 2317.41 of the Revised Code, the records, or copies or photographs thereof, of a hospital, * * * in lieu of the testimony in open court of their custodian, person who made them, or person under whose supervision they were made, may be qualified as authentic evidence if any such person endorses thereon his verified certification identifying such records[.]"

This rule allows an attorney to show (not read) a writing to the witness and allows the witness to read it silently to refresh his or her memory. If refreshed, the witness then testifies using present independent knowledge. *State v. Scott* (1972), 31 Ohio St.2d 1, 5, 60 O.O.2d 1, 3, 285 N.E.2d 344, 347. If a witness's memory is not refreshed, the cross-examination inquiry is completed, and the jury cannot be informed of the nature of the writing, nor its contents.

In this case, defendant Grant argues that the records were properly used to refresh plaintiff's recollection. The trial proceedings occurred as follows, with defense counsel asking plaintiff:

"Q. And were you referred for any outpatient psychiatric treatment?

"A. Not that I can remember.

"Q. Do you recall going to a Children's Hospital Facility out on the east side?

"A. Yeah, I do now since you just brought it up.

"Q. Handing you what's been marked for identification as Exhibit RR."

Plaintiff's counsel then objected since he had neither seen nor heard of the document previously, and it created surprise. The court overruled the objection. A recess was then taken until the next morning. When the trial resumed, defendant Grant's counsel handed plaintiff the Children's Hospital records and the Children's Hospital Guidance Center records and asked her:

"Q. * * * [A]nd do I understand from your testimony yesterday that this was not really a suicide attempt, and that you really only took two of the Dalmane tablets?

"A. That's true.

" * * *

"Q. Do you recall that while you were at the Children's Hospital, you were referred to the Children's Mental Health Center?

"A. I remember going to it once, but I don't remember where it was or what was said or who I even seen.

"Q. Then referring you to Exhibit RR, that other exhibit that you have there, will you look at the second page of that because I think it's more legible."

Plaintiff's attorney then objected again saying, "Your Honor, I'm going to enter another objection to this testimony. There is no indication of where this is from and she has answered that she knows nothing about it." The court overruled the objection saying, "If that can refresh her memory, then fine. I don't want her to read it." The questioning of plaintiff continued:

"Q. Miss Dellenbach, did you, in fact, or do you, in fact, recall that you went to Children's Hospital Guidance Center East with your family?

"A. I remember that I went somewhere, but I don't know for sure where it was at. I don't remember.

"Q. And you went one time with your family?

"A. Yes, I do remember that.

"Q. Will you take a look at that page and see if that refreshes your recollection. Okay. Does that refresh your recollection about a visit to a counseling service where you were referred by Children's Hospital?

"A. No, I don't.

"Q. But is it your testimony that you and your family went somewhere for a counseling session after you went to the emergency room at Children's?

"A. Yes.

"Q. Isn't that right?

"A. Yes, I did."

In this case, the witness was not asked simply to read the document silently but, through questions asked of plaintiff, defendant's counsel was able to reveal the substance of the contents of the records to the jury by numerous specific questions incorporating different parts of the document. The witness repeatedly answered that the writing did not refresh her memory and that answer should have ended the inquiry. The type of questioning utilized here is particularly troublesome because plaintiff was never impeached except by innuendo contained in the questions themselves. Neither the records nor testimony of the persons to whom it was suggested plaintiff talked was offered into evidence probably because they were not admissible.

■ Defendant Robinson argues that the use of the records was also proper under Evid.R. 613(B), which provides in pertinent part:

"Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require."

Defendant Robinson argues that using a prior statement is permissible to impeach a witness. Therefore, defendant Robinson argues that, since the plaintiff had stated that she had never attempted suicide, these records were appropriately used to impeach her. However, the Children's Hospital Guidance Center records were not demonstrated to be statements made by the plaintiff since she testified that she did not recognize the records. They were not her written

statement, and no evidence to the contrary was offered. The use of the records was not appropriate under Evid.R. 613(B).

■ Defendant Robinson also argues that the use of the records was appropriate under Evid.R. 803(4), which provides:

"Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

However, plaintiff denied that the incident was a suicide attempt and denied making other statements in the records. Additionally, the records contained writings by a third person of that person's conclusion and did not identify statements made by the plaintiff. Moreover, the Staff Note to Evid.R. 803(4) provides:

"The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted."

In this case, defendant Robinson did not establish any medical significance of the records but, instead, asked plaintiff whether counseling was received. Defendant Robinson's counsel was unable to probe in detail since plaintiff did not remember the visit, and her recollection was not refreshed; however, by persistent questioning, counsel was able to get the implication before the jury.

■ Another bar to admissibility is that the records involve hearsay. The information on the records was recorded not by the plaintiff but, rather, by an unknown third person. Counsel made no attempt to address the hearsay issue, although this defect may conceivably be cured by a proper foundation.

■ More importantly, use of the records is barred because they are privileged. Hospital records which include confidential communications are privileged in the absence of waiver. *Weis v. Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E.2d 245, paragraph five of the syllabus. Additionally, R.C. 2317.02(B)(1) provides [4]:

"A physician or a dentist concerning a communication made to him by his patient in that relation or his advice to his patient, except as otherwise provided in this division and division (B)(2) of this section, and except that, if the patient is deemed by section 2151.421 [2151.42.1] of the Revised Code to have waived any

---

4. R.C. 2317.02 was amended in 1991. However, the complaint was filed in 1990, and the 1991 amendment excludes pending actions. Therefore, the version effective November 1, 1989, is applicable here.

testimonial privilege under this division, the physician may be compelled to testify on the same subject."

Defendants argue that plaintiff waived any right to privilege as to these records. However, this is not correct. R.C. 2317.02(B)(1) continues:

"The *testimonial privilege* under this division *is waived,* and a physician or dentist may testify or may be compelled to testify in a civil action, *in accordance with* the discovery provisions of *the Rules of Civil Procedure* in connection with a civil action, or in connection with a claim under Chapter 4123. of the Revised Code, *under the following circumstances:*

"(a) If the patient or the guardian or other legal representative of the patient gives express consent;

"(b) If the patient is deceased * * *;

"(c) If a medical claim, * * * any other type of civil action, or a claim under Chapter 4123. of the Revised Code is filed by the patient * * *[.]" (Emphasis added.)

The section provides that the privilege is waived in accordance with the discovery provisions of the Civil Rules. The Civil Rules provide, however, that the scope of discovery is limited to matters which are not privileged. See Civ.R. 26(B).[5] Additionally, R.C. 2317.02(B)(1) provides that the privilege is waived in connection with a claim under R.C. Chapter 4123, which relates to workers' compensation and is inapplicable here. Moreover, no express consent was given here. Plaintiff has not waived her privilege relating to the records.

■ Defendants also argue that plaintiff waived her privilege by filing the complaint and requesting damages for mental injuries. The Ohio Supreme Court has held in *State ex rel. Lambdin v. Brenton* (1970), 21 Ohio St.2d 21, 24, 50 O.O.2d 44, 46, 254 N.E.2d 681, 683, that "a personal injury litigant does not waive the physician-patient privilege merely by filing his petition[.]" Therefore, plaintiff has not waived her privilege by filing her complaint or by testifying.

■ R.C. 2317.02(G) provides a privilege for school guidance counselors, professional counselors, counsel assistants, and social workers. The version before the 1991 amendment read, in part, as follows:

"A school guidance counselor who holds a valid teacher's certificate from the state board of education as provided for in section 3319.22 of the Revised Code or a person licensed or registered under Chapter 4757. of the Revised Code and

---

5. Civ.R. 26(B)(1) provides in part:

"Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action[.]" (Emphasis added.)

rules adopted under it as a professional counselor, counselor assistant, social worker, social work assistant, or independent social worker concerning a confidential communication made to him by his client in that relation or his advice to his client[.]"

In this case it is unclear what status the person who plaintiff consulted at Children's Hospital Guidance Center held. In the absence of proof that the person was not a physician or a professional counselor or does not otherwise fit within the R.C. 2317.02 privilege, the records are privileged and should not have been used in any form. Therefore, plaintiff's third assignment of error is well taken.

■■■ By her fourth assignment of error, plaintiff contends that the trial court erred by permitting counsel for defendant Robinson to present argument to the jury as part of voir dire examination. Plaintiff argues that defendant Robinson's counsel was making arguments to the jury in an attempt to sway the jury to his position. Plaintiff cites several examples, such as asking the jury if they believed physicians were guarantors of good results and that the practice of medicine is an art as well as a science. Plaintiff argues that such statements are inappropriate for voir dire but, rather, should be reserved for instructions from the court or for closing argument.

In *Vega v. Evans* (1934), 128 Ohio St. 535, 191 N.E. 757, paragraph one of the syllabus, the Ohio Supreme Court stated that "the purpose of the examination of a prospective juror on his *voir dire* is to determine whether he has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant." Litigants are given latitude in asking questions but:

"All questions in the *voir dire* examination must be propounded in good faith. The character and scope of such questions cannot become standardized, but must be controlled by the court in the exercise of its sound discretion, the court having for its purpose the securing to every litigant an unbiased jury. (Paragraph three of the syllabus of *Dowd–Feder v. Truesdell* [1936], 130 Ohio St. 530 [5 O.O. 179, 200 N.E. 762], approved and followed.)" *Krupp v. Poor* (1970), 24 Ohio St.2d 123, 53 O.O.2d 320, 265 N.E.2d 268, paragraph one of the syllabus.

Since the control of voir dire questions is within the discretion of the court, a reviewing court will not interfere absent an abuse of that discretion, even though some of the inquiry is questionable. The plaintiff has demonstrated neither that the jury was influenced by defendant's questions nor that the panel members became biased. Thus, plaintiff has not shown that the trial court abused its discretion. Accordingly, the fourth assignment of error is not well taken.

■■■ By her fifth assignment of error, plaintiff contends that the trial court erred in refusing to permit plaintiff's medical expert to testify as to a causal

connection between plaintiff's C-section, the dehiscence, the evisceration and the subsequent development of adhesions for which the laparotomy and repair surgery were required. Plaintiff argues that the court erred in refusing to admit the expert testimony. The court excluded the testimony because the medical expert in his deposition answered in the negative when on cross-examination he was asked, "Do you have an opinion to a reasonable medical probability whether the C-section, dehiscence, evisceration and the subsequent adhesions and corrective surgery were connected?" The proffer of testimony at trial was that the expert would testify when asked if he has an opinion as to "whether it would be more probable than not if there is a causal connection between the C-section, dehiscence and the laparotomy," his response would be "it is more probable than not that the adhesions were caused by the C-section, dehiscence and the evisceration." The court asked plaintiff's counsel if the expert would phrase his testimony in terms of an "opinion to a reasonable degree of medical certainty." Plaintiff's counsel stated that the expert would not change his deposition testimony but also that, at the deposition, the expert did not understand the terminology of "reasonable degree of medical certainty." The court excluded the testimony, stating that it would not let the expert testify to anything lesser than an opinion to a reasonable degree of medical certainty.

Plaintiff argues that the trial court erred in excluding the medical expert's testimony since the law allows an expert in a medical malpractice case to state an opinion as to proximate cause in terms of probability. See *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97, which held that, in a wrongful death case requiring evidence that, without medical malpractice, "the patient probably would have survived," in stating, at 253, 56 O.O.2d at 152, 272 N.E.2d at 104, that "[p]robable is more than 50% of actual." The Ohio Supreme Court in *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 369, 28 OBR 429, 430, 504 N.E.2d 44, 46, citing *Cooper* stated:

"It is well-settled that the establishment of proximate cause through medical expert testimony must be by probability. At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by defendant's negligence."

These cases establish that no specific words are required, only that the medical expert opinion must be to the effect that the negligence probably was a proximate cause of the subsequent injury.

The proffer of plaintiff's medical expert testimony in this case used the proper standard. The trial court erred in excluding such testimony merely because the expert did not use the exact language that the trial court desired. The trial court required the use of the words "reasonable medical certainty," which is essentially

the same standard as "medical probability." "Probability is most often defined as that which is more likely than not." *Cooper, supra,* citing *Clark v. Welch* (C.A. 1, 1944), 140 F.2d 271, 273; *In re Salomon's Estate* (1936), 159 Misc. 379, 384, 287 N.Y.Supp. 814. The Ohio Supreme Court has stated in *State v. Benner* (1988), 40 Ohio St.3d 301, 313, 533 N.E.2d 701, 714, certiorari denied (1990), 494 U.S. 1090, 110 S.Ct. 1834, 108 L.Ed.2d 962, "In this jurisdiction, an expert opinion is competent only if it is held to a reasonable degree of scientific certainty. * * * In this context, *'reasonable certainty' means 'probability.'* " (Citations omitted; emphasis added.) The trial court excluded the expert testimony when it should not have been excluded. The trial court did not even permit the questions to be asked of the expert witness in open court.[6] This error is prejudicial to plaintiff because the testimony would have been evidence of proximate cause between the C-section, dehiscence, evisceration and the subsequent adhesions and surgery. The weight to be given to that testimony is a matter for the jury, not for determining admissibility. Cross-examination might have weakened the weight of the expert testimony so the result would have been the same. However, plaintiff was entitled to present the evidence to the jury. Consequently, plaintiff's fifth assignment of error is well taken.

■ By her sixth assignment of error, plaintiff contends that the trial court erred in permitting the admission of the summary of prescriptions obtained by plaintiff when the records that created the basis for the summary report were not made available before trial to the plaintiff, in violation of Evid.R. 1006, and R.C. 2317.36 and 2317.38. R.C. 2317.36 provides:

"A written report or finding of facts prepared by an expert * * * and containing the conclusions resulting wholly or partly from *written information furnished by the co-operation of several persons acting for a common purpose,* shall, in so far as the same is relevant, be admissible when testified to by the person, or one of the persons, making such report or finding without calling as witnesses the persons furnishing the information, and without producing the books or other writings on which the report for finding is based, if, in the opinion of the court, no substantial injustice will be done the opposite party." (Emphasis added.)

Written reports or findings of fact containing conclusions resulting from the cooperation of several persons are admissible when testified to by the person or one of the persons making the report without having to call as witnesses all the persons furnishing the information. Here, there is no indication that this is the situation with respect to the summaries. R.C. 2317.38 provides:

---

6. The deposition testimony indicates the medical expert misunderstood the term "reasonable degree of medical certainty," as requiring a higher standard than probability.

"The report or finding mentioned in section 2317.36 of the Revised Code is not admissible unless the party offering it has given notice to the adverse party a reasonable time before trial of his intention to offer it, together with a copy of the report or finding * * * and has afforded him a reasonable opportunity to inspect and copy any records or other documents in the offering party's possession or control, on which the report or finding was based[.]"

R.C. 2317.38 provides conditions which must be met before the report or findings of fact are admissible. Plaintiff argues that, since a copy of the summary report was not given to her before trial, defendants could not use the summary report, and it was not admissible. However, R.C. 2317.36 and 2317.38 relate to expert reports or findings which contain conclusions resulting wholly or in part from the written information furnished by other individuals. In this case, the summary report did not contain conclusions drawn from the information but was only a compilation of the information taken from the prescription records. The expert derived an opinion or conclusion from the summary of information, but the summary itself did not contain such conclusions. Therefore, R.C. 2317.36 and 2317.38 do not apply to these circumstances.

■■■ More appropriately, defendants argue that the summary report was admissible under Evid.R. 1006, which provides:

"The contents of voluminous writings * * * *which cannot conveniently be examined in court* may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court." (Emphasis added.)

Weissenberger's Ohio Evidence, 1993 Courtroom Manual, Chapter 1006, correctly states that three conditions must be satisfied before a summary may be admissible under Evid.R. 1006:

"First, the writings * * * must be voluminous. This is a question for the court. Second, a proper foundation must be established for the introduction of the summary. As part of this requirement, the originals must be admissible in order that the summaries * * * based on those originals be admissible. * * * Third, the originals or duplicates must be made available to all litigants for examination or copying at any reasonable time and place."

Plaintiff argues that the records from which this summary was made were not voluminous, and that the third requirement was also not met in that the records were not available for inspection and copy by the plaintiff at a reasonable time and place since the records were not given to plaintiff until after the trial began.

Here, the record consists of only ten pages, includes three separate exhibits and involves prescriptions from three different pharmacies. No reason is demon-

strated as to why the ten pages are voluminous and the summary is necessary. Nor did defendants make any effort to establish a foundation for admission of the summary. Moreover, there was no need demonstrated at the trial for a summary since the records themselves were admitted into evidence.[7] If the records are so voluminous as to require a summary, then ordinarily the summary is admitted in lieu of the records since they, by definition, must be too voluminous to be admitted themselves. Admitting the records and the summary duplicated the information in front of the jury, thereby compounding the evidentiary effect. Additionally, the summary was misleading in that it was compiled as a single list from prescription records of the three pharmacies in such a fashion as to suggest a single series of transactions was involved.[8]

Although the third requirement has been met since the defendants gave the records to plaintiff as soon as possible, the second requirement has not been fulfilled. As stated above, no foundation was established for the summary.

Additionally, the original records were not admissible. For the summary to be admissible, the records upon which it is based must be admissible. In this case, the records are irrelevant since they have no probative value upon the issue being tried—medical malpractice of defendants. Defendants attempted to paint a picture of plaintiff as a drug abuser to destroy her credibility. The pharmacist that testified stated that she *"suspected * * * drug misuse if not drug abuse."* (Emphasis added.) Not only was that testimony not couched in correct terms, but the issue is irrelevant. Assuming plaintiff was abusing her prescription drugs, that is irrelevant to the liability and damages issues in this case. Evid.R. 402 excludes all irrelevant evidence. The records, testimony and summary should have all been excluded because they are irrelevant, and the prejudicial effect was strong. In addition, such evidence is inadmissible under Evid.R. 404(B). Nor is it admissible under Evid.R. 608(B), which precludes extrinsic evidence of specific instances of a witness's conduct unless it is "clearly probative of truthfulness or untruthfulness[.]" Consequently, plaintiff's sixth assignment of error is well taken.

By her seventh assignment of error, plaintiff contends that the trial court erred by granting privileges to Grant to shield peer review reports relating to defendant Robinson, and investigative reports relating to the evisceration incident in accordance with R.C. 2305.24 and 2305.251. Plaintiff argues that it was unfair to allow defendants to inquire into plaintiff's life back to early childhood

---

7. Plaintiff's attorney objected to questions about the records, but did not object again when the records were admitted.

8. A comparison summary may under some circumstances be admissible when it reflects the expert's conclusion and is not misleading.

while shielding the physician. Moreover, plaintiff argues that the privilege deprived her of her due process rights in violation of the Ohio and United States Constitutions. R.C. 2305.24 provides in part:

"Any information, data, reports, or records made available to a quality assurance committee or utilization committee of a hospital * * * shall be confidential and shall be used by the committee and the committee members only in the exercise of the proper functions of the committee."

This section shields any reports or information from anyone other than a quality assurance committee. R.C. 2305.251 provides in part:

"Proceedings and records of all review committees described in section 2305.25 of the Revised Code shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care professional, [or] a hospital, * * * arising out of matters which are the subject of evaluation and review by the committee."

These sections provide a statutory privilege and prevent the admissibility of peer review and investigative reports. Plaintiff has suggested no reason why this statutory privilege should not apply other than the alleged unfairness and violation of due process. However, this court has held in *Gates v. Brewer* (1981), 2 Ohio App.3d 347, 349, 2 OBR 392, 394, 442 N.E.2d 72, 75, that R.C. 2305.25 and 2305.251 do not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution since they are reasonably related to the legitimate purpose of improving health care. Plaintiff has not demonstrated that the statutory privilege should not apply. Consequently, the trial court did not err in excluding any peer review reports relating to the physician or any investigative reports relating to the evisceration incident, and plaintiff's seventh assignment of error is not well taken.

 By her eighth assignment of error, plaintiff contends that the trial court erred by allowing defendants to question plaintiff about payment of her medical bills by MedPlan. These questions during cross-examination occurred at two different times. The first time plaintiff's counsel did not object. The questions arose during cross-examination by defendant Robinson's counsel as follows:

"Q. Despite being depressed over this back pain, despite being nervous over this back pain, and despite being scared over this back pain, you never did go to a doctor who were one of the back doctors, if you will, that Dr. Goff referred you to?

"A. No, because most of the time the doctors from Riverside will not accept the health insurance that I have, and I did not have the money to go to a specialized doctor for my back.

"Q. Ma'am, you have—you have the coverage through the MedPlan, do you not?

"A. Yes, I do.

"Q. And that, when you have coverage through the MedPlan, if a physician accepts that, you don't have to pay any bills, do you?

"A. Yeah, I know. And what I'm saying is, the MedPlan only accepts certain doctors."

There was no objection to the admission of this testimony. Then again on cross-examination, this time by counsel for defendant Grant, plaintiff was asked:

"Q. Miss Dellenbach, I believe your previous testimony indicated that your medical expenses were paid by MedPlan; is that correct?"

Plaintiff's attorney made an objection. Although the evidence was partially in evidence, the court properly sustained the objection.

Plaintiff cannot complain about the second incident since the court sustained the objection. Moreover, plaintiff did not object to the admission of the evidence the first time it was asked, nor did plaintiff make a motion to strike the evidence, so the error has not been preserved for review. Therefore, the eighth assignment of error is not well taken.

By her ninth assignment of error, plaintiff contends that the trial court erred by its rulings in permitting the defendants advantageously to employ delay in producing discovery, in utilizing surprise in the presentation of witnesses and exhibits, and in permitting the questioning of witnesses about irrelevant matters designed only to denigrate the plaintiff and prejudice the minds of the jury against the plaintiff. Plaintiff complains about several rulings, including the lack of identification of witnesses, the discussion of medical bills paid by MedPlan, the Children's Hospital records and Children's Hospital Guidance Center records to paint the picture of plaintiff as a drug abuser, and the shielding of the peer review reports. These items have been discussed in the other assignments of error. However, plaintiff also argues that the defense inquired into the psychiatric records of plaintiff's father and mother, and the workers' compensation claim record of plaintiff's father. Plaintiff admits receiving a favorable ruling on her protective order filed on January 10, 1992.[9] Therefore, the inquiry into the psychiatric records was stopped by the trial court. To the extent not discussed in other assignments of error, plaintiff's ninth assignment of error is not well taken.

9. Plaintiff did not assert as error the cross-examination of plaintiff's father concerning his psychiatric treatment. Plaintiff's father asserted physician-patient privilege concerning his communications and treatment with his physician. However, the trial court erred by requiring Mr. Dellenbach to answer the inquiries on cross-examination over objection.

For the foregoing reasons, plaintiff's third, fifth, and sixth assignments of error are sustained; plaintiff's first, fourth, seventh, eighth and ninth assignments are overruled; plaintiff's second assignment of error is moot; the judgment of the Franklin County Court of Common Pleas is reversed; and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and STRAUSBAUGH, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.