[Cite as *In re Te.R.*, 2015-Ohio-5498.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Te.R., Ty.R.                              Court of Appeals No. L-15-1015

Trial Court No. AB 14239900

**DECISION AND JUDGMENT**

Decided: December 30, 2015

* * * * *

Christopher S. Clark, for appellant.

Karen L. Bower, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, T.R., appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, finding that appellant's child, Te.R., was dependent, neglected, and abused, and appellant's child Ty.R., was dependent and neglected. For the reasons that follow, we affirm.

**Facts and Procedural Background**

{¶ 2} On April 24, 2014, appellee, Lucas County Children Services ("LCCS"), filed a complaint in dependency, neglect, and abuse in response to allegations it received that appellant had physically and sexually abused Te.R., who was approximately 10 years old at the time. The matter proceeded to a hearing before a magistrate on August 27, 2014.

{¶ 3} At the hearing, it was revealed that LCCS became involved with the family when it received a referral that Te.R. was hysterical when she got into trouble at school because she feared that appellant would whip her. The school nurse testified that, at the time, she observed bruising on Te.R.'s buttock, and that Te.R. reported that appellant had whipped her with a belt earlier. In a follow up meeting at the family's house, appellant admitted to the LCCS caseworker, Nicholas Menke, that he disciplined Te.R. with a belt. Menke then spoke with Te.R. and Ty.R. about safe and unsafe touches and neither child disclosed anything further. At Menke's suggestion, Te.R. was taken to Harbor for counseling.

{¶ 4} During the diagnostic psychological assessment at Harbor, Te.R. stated that she was sexually abused by appellant, and that the abuse had been happening for several years. Having received a referral for sexual abuse, Menke again met with Te.R., this time at the Children's Advocacy Center. During this meeting, the videotape of which was entered into evidence by LCCS during rebuttal, Te.R. again reported that she had been sexually abused by appellant, with the last incident occurring a month prior. Te.R.

2.

described that when she was home alone with appellant, appellant would take off his clothes and have her pull her pants down. She reported that he would put his penis inside of her and it would hurt.

{¶ 5} Te.R. was then referred for an exam with Kim Jones, the child abuse program coordinator at St. Vincent Mercy Medical Center, and Dr. Randal Schlievert. At the hearing, Jones testified that Te.R. reported that appellant had touched her privates with his privates on more than one occasion, and that it had begun when Te.R. was five years old. Jones also testified that she asked Te.R. if there was anything else Te.R. wanted to say, and Te.R. replied that one time after appellant did something to her, she went into the bathroom and wiped and there was blood. Te.R. also communicated that appellant told her not to tell anyone or talk about what happened.

{¶ 6} Dr. Schlievert, an expert in the area of child sexual abuse, also testified regarding his exam of Te.R. Dr. Schlievert reiterated the statements made by Te.R. regarding the sexual abuse, and then described that the results of the physical exam were normal. Dr. Schlievert explained that it is not unusual that the physical exam was normal given the amount of time that had passed since the alleged abuse and the fact that children heal remarkably quickly. Dr. Schlievert concluded that, "Medically * * * I would simply say everything I've said in the sexual abuse is more likely than not and of concern to mandate not seeing the father or be with mother if she's not protective."

{¶ 7} Dr. Schlievert also testified regarding recantation. He stated that it is not uncommon for children to recant their allegations of sexual abuse, and that some of the

3.

reasons for recantation include fear of what would happen to the child and the possible separation of the family, lack of support from the primary caregiver, pressure from others, the general chaos of life, and ongoing contact with the perpetrator. Regarding Te.R., Dr. Schlievert testified that he recognized that a lack of maternal support and fear of being placed in foster care were present. He elaborated that his recognition of a lack of maternal support stemmed from the fact that mother contacted his office while with appellant to get a copy of his report so that they could fight the allegations of abuse.

{¶ 8} Te.R. also testified at the hearing. Prior to her testimony, the magistrate held an in-camera interview from which she determined that Te.R. was competent, although the magistrate questioned her veracity. Te.R. proceeded to then testify that appellant did not touch her privates in an unsafe way, and that she told people that he did "[b]ecause I didn't like the discipline and [INAUDIBLE] my own self."

{¶ 9} In addition to the testimony regarding sexual abuse, evidence was presented concerning potential contact between the children and appellant in violation of the court's earlier no contact order. The children's guardian ad litem testified that on the morning of the hearing she observed the children sitting back to back with their parents in the lobby, and that she was told by Te.R. that they saw appellant the previous weekend at a family wedding and reception. The paternal grandmother testified, however, that she took the children to the wedding, they sat in the back, and the children did not go to the wedding reception.

4.

{¶ 10} Following the testimony, the magistrate found that Te.R. was a dependent, neglected, and abused child, and that Ty.R. was dependent and neglected. The magistrate ordered that temporary custody of the children be awarded to LCCS, and that the children should be placed with the paternal grandmother. In the written decision, the magistrate specifically found that Dr. Schlievert "opined that beyond a reasonable degree of medical certainty this child was sexually assaulted by her father." The magistrate also found that the abuse had been happening for at least the past several years, and although the child recanted her allegations, such recanting has been studied and is not uncommon among victims of child sexual abuse. The magistrate further found that, during the in camera interview, the child indicated that if she continued to tell everyone she had been abused, then appellant may end up going to jail and she and Ty.R. may end up in foster care. Te.R. then testified on the witness stand that she was not sexually abused by appellant, but the magistrate found that her testimony was not credible.

{¶ 11} Appellant subsequently entered objections to the magistrate's decision, arguing that the magistrate's decision that the children were dependent, neglected, and abused was against the manifest weight of the evidence. Appellant noted that Dr. Schlievert never opined beyond a reasonable degree of medical certainty that Te.R. was sexually abused. He also argued that the magistrate improperly considered Te.R.'s in-camera testimony as evidence of dependence, neglect, and abuse. In addition, he contended that since LCCS did not disclose its intention to submit the videotape as evidence, it could only be used to impeach Te.R., and therefore was not direct evidence

5.

of abuse, but rather related to Te.R.'s credibility. Finally, appellant concluded that LCCS did not present clear and convincing evidence of abuse as the admissible evidence consisted of the "not-credible child's allegations of abuse which were recanted and not supported by any physical evidence."

{¶ 12} The trial court, upon review, found appellant's objections not well taken, and adopted the magistrate's decision. The trial court determined that although Dr. Schlievert did not give an opinion to a reasonable degree of medical certainty, he nonetheless stated that, in his expert opinion based on the physical exam and interview, it was more likely than not that Te.R. had been sexually assaulted by appellant. The court further noted that no objection was made as to the form of Dr. Schlievert's opinion. Regarding appellant's concern that the magistrate used Te.R.'s in-camera interview as substantive evidence, the trial court found no indication of that being the case. Rather, the court found that the magistrate committed no error in considering Te.R.'s in-camera statements for purposes of determining her credibility. Finally, the trial court determined that LCCS' introduction of the videotaped interview in rebuttal was not in error, as it was offered to explain, refute, or disprove Te.R.'s recantation made during appellant's case.

### Assignments of Error

{¶ 13} Appellant has timely appealed the trial court's decision, raising four assignments of error for our review:

      1. Appellant received ineffective assistance of counsel.

6.

2. The trial court erred in finding that Dr. Randall Schlievert's medical opinion was stated in terms of "a reasonable degree of medical certainty."

3. The trial court's decision to find Te.R. to be a neglected and abused child and Ty.R. to be a neglected child was against the manifest weight of the evidence.

4. The cumulative effect of the errors at trial deprived the Appellant of the right to a fair trial.

## Analysis

{¶ 14} For ease of discussion, we will address appellant's assignments of error out of order, beginning with his second assignment of error.

## Admissibility of Dr. Schlievert's Opinion

{¶ 15} In his second assignment of error, appellant argues that Dr. Schlievert's conclusion that Te.R. was sexually abused by appellant did not meet the legal standard of a reasonable degree of medical certainty. Furthermore, he contends that Dr. Schlievert's opinion was based solely on the information from Te.R. and no further investigation was conducted regarding other potential explanations for the allegations. Finally, appellant suggests that Dr. Schlievert lacked objectivity in that he unrightfully judged the mother for supporting appellant and challenging the allegations.

7.

{¶ 16} "A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." *Scott v. Yates*, 71 Ohio St.3d 219, 221, 643 N.E.2d 105 (1994).

{¶ 17} As to appellant's first argument that Dr. Schlievert's opinion did not meet the legal standard of a reasonable degree of medical certainty, we disagree. "In Ohio, the admissibility of expert testimony that an event is the proximate cause is contingent upon the expression of an opinion by the expert with respect to the causative event in terms of probability." *Stinson v. England*, 69 Ohio St.3d 451, 455, 633 N.E.2d 532 (1994). "[A]n event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue." *Id.* Here, Dr. Schlievert's testimony met the standard of probability wherein he testified, "Medically, what I would say is what I have today is my understanding of [Te.R.]'s case, from back to April to today, * * * [is that] sexual abuse is *more likely than not* and of concern to mandate not seeing the father or be with mother if she's not protective." (Emphasis added.) The fact that Dr. Schlievert did not use the specific phrase "reasonable degree of medical certainty" is inconsequential. *See Brackett v. Moler Raceway Park, L.L.C.*, 12th Dist. Brown No. CA2012-06-009, 2013-Ohio-1102, ¶ 20-21 (expert opinion that is given with all his measurements, analysis, and data in mind, and which is "clear" to him is admissible); *Dellenbach v. Robinson*, 95 Ohio App.3d 358, 373-374, 642 N.E.2d 638 (10th Dist.1993) (trial court erred in requiring the use of the words "reasonable medical certainty" when testimony must be in terms of probability, which is defined as more likely than not).

8.

**{¶ 18}** Regarding appellant's second and third arguments, we note that Dr. Schlievert's opinion was rendered based upon his interview and examination of Te.R., his experience and research in the area of child sex abuse victims, and his knowledge that mother, while with appellant, sought a copy of his report so that they could challenge the allegations. Appellant's arguments suggest that Dr. Schlievert reached his conclusion based on incomplete evidence, or due to a prejudice against appellant and mother. However, appellant's arguments go to the weight of Dr. Schlievert's testimony, not its admissibility. *See Pacific Great Lakes Corp. v. Bessemer & Lake Erie R.R.*, 130 Ohio App.3d 477, 503, 720 N.E.2d 551 (8th Dist.1998) ("Any weaknesses in the factual underpinnings of [expert] testimony went to the weight and or credibility of his testimony rather than its admissibility."); *Johnson v. Knipp*, 36 Ohio App.2d 218, 220, 304 N.E.2d 914 (9th Dist.1973) ("The absence of certain facts, or the failure of proof of others, goes to the weight and credibility of the testimony, and not to its admissibility.").

**{¶ 19}** Therefore, finding no error to the trial court's admission of Dr. Schlievert's testimony, we hold that appellant's second assignment of error is not well-taken.

### Ineffective Assistance of Counsel

**{¶ 20}** In his first assignment of error, appellant argues that he was deprived the effective assistance of counsel in three ways. First, counsel failed to call witnesses to both refute the allegations of abuse and to explain Te.R.'s motivation for making the allegations. Second, counsel failed to properly examine or re-examine witnesses in

9.

regard to essential facts. Finally, counsel failed to object to the testimony of Dr. Schlievert.

{¶ 21} R.C. 2151.352 and Juv.R. 4(A) provide that children and their parents are entitled to an attorney for all proceedings under R.C. Chapter 2151 and have the right to appointed counsel if they are indigent. The right to counsel in these cases naturally includes the right to effective counsel, and the test for ineffective assistance of counsel is the same as it is in criminal cases. *In re Baby Girl Doe*, 149 Ohio App.3d 717, 2002-Ohio-4470, 778 N.E.2d 1053, ¶ 99 (6th Dist.). To prevail on a claim of ineffective assistance of counsel, a claimant must demonstrate that counsel's performance was deficient, and that the deficient performance resulted in prejudice. *In re Anisha N.*, 6th Dist. Lucas No. L-02-1370, 2003-Ohio-2356, *3. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In conducting our review for ineffective assistance, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

{¶ 22} In his first argument under this assignment of error, appellant contends that counsel was ineffective for failing to call him as a witness to refute the "general and nonspecific" allegations of sexual abuse, to describe his relationship with his children, to

10.

speak to whether he was actually present in the home, and to clarify whether he had any contact with the children at the wedding the week before the hearing. In addition, appellant argues that counsel was ineffective in failing to call the mother as a witness, failing to ensure that a subpoenaed witness appeared to testify, and failing to call other, unnamed witnesses to address the credibility of Te.R.'s accusations.

{¶ 23} We do not find that counsel's actions in this regard constitute ineffective assistance. "In general, 'counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 125, quoting *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). Moreover, "failure to call a witness will not substantiate a claim for ineffective assistance of counsel unless prejudice is shown." *Toledo v. Deiley*, 6th Dist. Lucas No. L-14-1021, 2015-Ohio-462, ¶ 21, quoting *State v. Beesler*, 11th Dist. Ashtabula No. 2002-A-0001, 2003-Ohio-2815, ¶ 13. Here, there is nothing in the record to suggest what appellant or the other additional witnesses would have offered as testimony to call into question Te.R.'s allegations. Thus, we find no basis on which to overcome the presumption that the selection of testifying witnesses was sound trial strategy and that counsel's performance fell within the wide range of reasonable professional assistance.

{¶ 24} In his second argument, appellant contends that counsel was ineffective for failing to question the paternal grandmother regarding her observations relating to Te.R.'s ability to tell the truth or whether Te.R. had made any complaints that appellant

11.

had abused her. In addition, counsel failed to clarify whether there was any direct contact between appellant and his children at either the wedding or the reception. Appellant argues that the latter point is prejudicial because it allowed the court to form a negative view of him for having violated the no contact order.[1]

{¶ 25} As with the decision to call witnesses, the manner of questioning the witnesses falls within the rubric of trial tactics. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). In this case, appellant's concerns were actually addressed during the examination of the paternal grandmother. On direct examination, trial counsel attempted to ask the paternal grandmother about safe and unsafe touches, but the paternal grandmother responded down a confused path that led to her stating that changing diapers was an inappropriate touch. Nevertheless, counsel ultimately was able to salvage a response that Te.R. has never said anything about any other kind of touches, and that the paternal grandmother believes that Te.R. would know "what makes her feel funny or something." In addition, other than hyperactivity and eczema, the paternal grandmother stated that she did not see anything in Te.R. that would be concerning. As to the issue of the children being at the wedding, the paternal grandmother testified on cross-examination that it was her decision to take the children to the wedding, that they sat in the back of the church, that appellant was at the front of the church playing music for the

---

[1] Appellant also notes in this section of his brief that counsel called Menke, Te.R.'s cousin, and Te.R. as witnesses, but appellant does not explain how his questioning or lack thereof constitutes ineffective assistance.

12.

processional, that they left after the ceremony, and that the children did not go to the reception, thus leading to the inference that the children did not have direct contact with appellant. Therefore, we cannot say that counsel's conduct fell below an objective standard of reasonableness, or that additional questioning as to Te.R.'s disclosure of inappropriate touches, or to the children's contact with appellant at the wedding, would have led to new information creating a reasonable probability of a different result in the proceedings.

{¶ 26} Finally, as his third argument for ineffective assistance of counsel, appellant states that counsel was ineffective for failing to object to the opinion testimony of Dr. Schlievert. However, as discussed in appellant's second assignment of error above, the trial court did not err in admitting Dr. Schlievert's testimony. Thus, counsel was not ineffective for failing to object to it.

{¶ 27} Accordingly, having found appellant's proposed basis for ineffective assistance of counsel to be without merit, we hold that appellant's first assignment of error is not well-taken.

## Manifest Weight

{¶ 28} In his third assignment of error, appellant argues that the trial court's conclusion that Te.R. was abused, dependent, and neglected was not supported by the evidence. He concludes that "there is no evidence of fear, pressure from others or ongoing contact with the perpetrator that would explain why Te.R. recanted her prior

13.

statements when she testified in court. The most logical explanation is that she was upset with her father for spanking her, which is precisely what she testified to."

{¶ 29} A trial court's determination that a child is abused, neglected, or dependent must be supported by clear and convincing evidence. R.C. 2151.35(A). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "An appellate court should not reverse a trial court's adjudication when competent and credible evidence supports the trial court's findings of fact and conclusions of law." *In re E.M.*, 2015-Ohio-1392, 31 N.E.3d 204, ¶ 7 (6th Dist.), citing *In re Alexander C.*, 164 Ohio App.3d 540, 2005-Ohio-6134, 843 N.E.2d 211, ¶ 7 (6th Dist.).

{¶ 30} Here, appellant does not contend that the facts as alleged would not render Te.R. an abused, neglected, or dependent child, or Ty.R. a neglected or dependent child. Rather, he challenges the truth of the allegation. In this case, supporting the court's finding of sexual abuse is the testimony of Jones, the expert testimony of Dr. Schlievert, and Te.R.'s recorded interview with Menke. Although appellant cites the contrary evidence of Te.R.'s testimony at trial, and the grounds for her motivation to have fabricated the allegations, we cannot say that the trial court's decision was not supported

14.

by competent credible evidence. Therefore, we hold that the trial court's finding that Te.R. was sexually abused by appellant is not against the manifest weight of the evidence.

{¶ 31} Accordingly, appellant's third assignment of error is not well-taken.

## Cumulative Error

{¶ 32} Finally, as his fourth assignment of error, appellant argues that the cumulative effect of the errors at the hearing deprived him of a fair trial. Here, we have not found multiple instances of error by the trial court. Therefore, the cumulative error doctrine does not apply. *State v. Wright*, 6th Dist. Lucas No. L-12-1327, 2013-Ohio-5910, ¶ 31, citing *State v. Madrigal*, 87 Ohio St.3d 378, 398, 721 N.E.2d 52 (2000) ("[I]n order even to consider whether 'cumulative' error is present, we would first have to find that multiple errors were committed in this case.").

{¶ 33} Accordingly, appellant's fourth assignment of error is not well-taken.

## Conclusion

{¶ 34} For the foregoing reasons, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                                _____

JUDGE

Arlene Singer, J.

_____

Stephen A. Yarbrough, P.J.                         JUDGE

CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.