DECISION AND JUDGMENT ENTRY
{¶ 1} Brett Knott appeals his convictions for obstruction of justice and tampering with evidence. Knott contends the trial court erred by permitting the jury to hear a recording of his son's jailhouse conversation with Chris Wittkugle. He also argues that trial counsel was ineffective for failing to object to the introduction of the recording. We conclude the trial court should not have allowed the jury to hear the recording of the conversation. Since the state was only using the recording to refresh the son's memory, it should have played the recording for him outside the presence of the jury. However, even without the recording, the state presented ample evidence of Brett Knott's guilt. Thus, the court's error does not constitute plain error. Furthermore, although counsel should have objected to the introduction of the recorded conversation, this deficient performance did not prejudice Brett Knott's defense.
 {¶ 2} Knott also argues that the trial court erred by failing to give a jury instruction on co-conspirator testimony. Additionally, he argues that his trial counsel was ineffective for failing to object to the absence of such an instruction. Under R.C. 2923.01(H)(2), a jury instruction on co-conspirator testimony is only appropriate when an alleged co-conspirator testifies against the defendant "in a case in which the defendant is charged with conspiracy". Because the state did not charge Brett Knott with conspiracy, R.C. 2923.01(H)(2) is inapplicable. Moreover, counsel was not deficient for failing to object to the absence of an instruction since that effort would have been fruitless.
 {¶ 3} In addition to challenging his convictions, Knott also challenges the trial court's imposition of consecutive sentences. He argues that the court did not consider the necessary factors before imposing consecutive sentences. We agree. Our review of the sentencing transcript reveals that the trial court failed to make the statutorily required findings before imposing consecutive sentences. Thus, we affirm Brett Knott's convictions but remand the case for resentencing.
 {¶ 4} In September 2001, Brett Knott's son, Eric Knott, murdered David and Ruth Malcolm. At the time of the murders, Brett Knott was working at a construction firm in Columbus. During their investigation, Sheriff's deputies learned that Brett Knott might have disposed of his son's bloodstained clothing at the construction site. When interviewed, however, Brett Knott denied this. Knott stated that he did not know anything about the murders or his son's clothing.
 {¶ 5} In October 2001, Sheriff's deputies searched the dumpster at the construction firm where Brett Knott worked. The search revealed a plastic grocery bag containing Eric Knott's bloodstained clothing. Subsequent DNA analysis indicated that the blood and other tissue on the jeans belonged to the Malcolms and that hairs found in the inseam of the jeans belonged to Eric Knott.
 {¶ 6} After finding the son's clothing, Sheriff's deputies arrested and interviewed Brett Knott. Once more, Knott denied knowingly disposing of his son's clothing. Knott indicated that he often takes excess trash from home to dispose of at work. Moreover, he indicated that he does not go through the trash to see what he is throwing away.
 {¶ 7} In October 2002, the grand jury indicted Brett Knott on one count of obstruction of justice in violation of R.C.2921.32(A)(4) and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). Following a two-day trial, the jury convicted Knott of both counts. The trial court then ordered a presentence investigation report. At sentencing, the trial court sentenced Brett Knott to five years on each count, to be served consecutively. Knott now appeals and raises the following assignments of error: "ASSIGNMENT OF ERROR NO. 1 — The trial court committed plain error in allowing the jury to hear the complete tape of Eric Knott's jailhouse conversation with Christopher Wittkugle. ASSIGNMENT OF ERROR NO. 2 — Trial counsel's failure to object to the inclusion of a complete tape of Eric Knott's jailhouse conversation with Christopher Wittkugle constituted ineffective assistance of counsel. ASSIGNMENT OFERROR NO. 3 — The trial court erred in imposing consecutive sentences upon Knott. ASSIGNMENT OF ERROR NO. 4 — The trial court committed plain error when it failed to give an instruction on the testimony of coconspirators. ASSIGNMENT OF ERROR NO. 5 — Counsel's failure to raise an objection when the trial court failed to give the coconspirator instruction constitutes ineffective assistance of counsel.
 {¶ 8} Because Brett Knott's first two assignments of error are related, we will address them together. Knott argues that the trial court committed plain error when it permitted the jury to hear the recording of Eric Knott's conversation with Chris Wittkugle. He also argues that his trial counsel was ineffective for failing to object to the introduction of the audio recording.
 {¶ 9} Before we can address the merits of Brett Knott's argument, we must address a preliminary question, namely, whether a plain error analysis is appropriate in light of the fact that there was an objection concerning this evidence. Although trial counsel objected to the introduction of the recording, he objected solely on hearsay grounds. At no time did trial counsel argue that it was improper for the state to play the recording in the jury's presence while refreshing Eric Knott's memory. Because counsel's objection did not apprise the court of this specific argument, we believe a plain error analysis of the issue is appropriate. See Evid.R. 103(A)(1), which requires a specific objection unless the basis is apparent from the context. Accordingly, we will review Brett Knott's argument under a plain error standard.
 {¶ 10} Notice of plain error under Crim.R. 52(B) is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240;State v. Hill, 92 Ohio St.3d 191, 196, 2001-Ohio-141,749 N.E.2d 274. Plain error should not be invoked unless it can be said that, but for the error, the outcome of the proceedings would clearly have been otherwise. See State v. Jackson,92 Ohio St.3d 436, 438, 2001-Ohio-1266, 751 N.E.2d 946; State v.Sanders, 92 Ohio St.3d 245, 263, 2001-Ohio-189, 750 N.E.2d 90.
 {¶ 11} The issue in this assignment of error is somewhat unusual because of the witness the state chose to present. Normally, one would not expect the state to call a convicted murderer to testify against his father in a case where the father is charged with helping the son destroy evidence of the murders. Under such circumstances, the state could clearly anticipate a lack of cooperation on the son's part. Accordingly, the state apparently had envisioned a strategy to use Eric Knott's prior statement either for impeachment or as substantive evidence of his father's involvement in hiding the bloodstained clothing. Thus, the state filed a motion asking the trial court to call Eric Knott as its witness at trial. See Evid.R. 614 (Permitting the court to call witnesses either on its own motion or at the suggestion of a party.) However, the record contains no indication that the trial court ever ruled on the motion. Thus, we assume that the court overruled the motion. See Takacs v.Baldwin (1995), 106 Ohio App.3d 196, 209, 665 N.E.2d 736; Statev. Mulhern, Vinton App. No. 02CA565, 2002-Ohio-5982, fn.9. Moreover, there is nothing in the trial transcript to indicate that Eric Knott was the court's witness, or that the court declared him a hostile witness. Rather, it appears from the transcript that he was the state's witness and it proceeded under direct examination.
 {¶ 12} The state began by asking Eric Knott some preliminary questions, which he readily answered. The state then asked him if he remembered having a conversation with Chris Wittkugle while at the Sheriff's Office. Eric Knott indicated that he could not answer the question because of his pending appeal. After verifying with the state that Eric Knott would not face additional charges as a result of his testimony, the trial court ordered him to answer the question. Eric Knott again refused to answer, asserting his Fifth Amendment right against self-incrimination. At that point, the court informed him that he would be in contempt if he did not answer the state's question. The following exchange then took place: "STATE: Mr. Knott do you recall having a conversation with Kris Wittkugle over at the Sheriff's department on the 10th of December, 2001? ERIC KNOTT: Yea I think so. STATE: You think so. ERIC KNOTT: Yea. STATE: You need your memory refreshed as to the conversation? ERIC KNOTT: No. STATE: You don't. You recall talking to Kris Wittkugle about the, you recall talking to Kris Wittkugle about the murders of Dave and Ruth Malcolm? ERIC KNOTT: No. STATE: You don't recall that? So your saying that you would recall that if I played the tape for you? Is that a yes or no? Sorry we can't (inaudible). ERIC KNOTT: I don't remember. I don't remember. STATE: You don't remember it. I ask then if I be allowed to refresh then Mr. Knott's recollection. COURT: You would be allowed to do that. Permission granted."
 {¶ 13} After the court granted the state permission to refresh Eric Knott's memory, Brett Knott's counsel objected arguing that the recorded conversation was inadmissible hearsay. The state, however, argued that it was only using the recording to refresh the witness's memory. Thus, the trial court overruled counsel's objection, noting a continuing objection for the record. The state then proceeded to play the recording for Eric Knott in the presence of the jury. In the recording, Eric Knott implicated his father in the scheme to hide or destroy the bloodstained clothing. When the recording ended, the state asked Eric Knott if he remembered the conversation with Chris Wittkugle. He responded that he did remember the conversation. The state then restated significant portions of the conversation and asked him if he remembered saying those things.
 {¶ 14} Brett Knott argues that it was error for the state to play the recording in the jury's presence. He argues that if the state was using the recording to refresh his son's memory, it should have played the recording outside the presence of the jury. Knott further argues that it was improper for the state to use an audio recording to refresh his son's memory.
 {¶ 15} Evid.R. 612 permits a party to use a writing to refresh a witness's recollection. See Evid.R. 612; State v.Ballew, 76 Ohio St.3d 244, 254, 1996-Ohio-81, 667 N.E.2d 369. However, the party may not read the writing aloud, have the witness read it aloud, or otherwise place it before the jury.Ballew, supra. Rather, the witness should read the writing silently in order to refresh his or her recollection. Dayton v.Combs (1993), 94 Ohio App.3d 291, 640 N.E.2 863. If the writing refreshes the witness's recollection, the witness then testifies using present independent knowledge. State v. Scott (1972),31 Ohio St.2d 1, 5-6, 285 N.E.2d 344; Dellenbach v. Robinson
(1993), 95 Ohio App.3d 358, 368, 642 N.E.2d 638. It is this testimony, not the writing, that is the evidence. State v.Wolfe (June 17, 1996), Gallia App. No. 95CA04.
 {¶ 16} Although Evid.R. 612 refers specifically to writings, anything can be used to refresh a witness's recollection. See 1 Gianelli Snyder, Evidence (2001) 512, Section 612.4 ("Anything can be used to refresh memory."); Weissenberger, Ohio Evidence (2004) 314, Section 612.3 ("It is well-established that the type of `writing' authorized under the refreshed recollection doctrine includes not only books, documents, or other papers, but recordings, photographs, and songs as well.") Thus, a party may use a videotape or audio recording to refresh a witness's recollection. See, e.g., State v. Sargent (1975),41 Ohio St.2d 85, 90, 322 N.E.2d 634 (videotape); State v. Sochor (July 26, 1999), Stark App. No. 1998CA00139 (audio recording); State v.Woods (June 13, 1991), Cuyahoga App. No. 58703 (audio recording). As with a writing, however, the party may not place the recording before the jury. See, generally, Ballew,76 Ohio St.3d at 254. Instead, the witness should review the recording outside the jury's presence.
 {¶ 17} Here, the court correctly permitted the state to refresh Eric Knott's memory by means of the recorded conversation. However, the court erred when it permitted the state to play the recording in the jury's presence. Allowing the jury to hear the audio recording encouraged the jury to treat it as evidence. See Weissenberger, Ohio Evidence (2004) 314, Section 612.3 ("In order to avoid inviting the jury to accord the writing evidentiary status, the writing should not be read aloud.") However, the recording was not evidence. The record clearly indicates that the state only played the recording as a means of refreshing Eric Knott's memory. Because the recording was being used solely for this purpose, it should have been played for Eric Knott outside the jury's presence.
 {¶ 18} The state, however, now argues that the recording was otherwise admissible under Evid.R. 803(5) as a recorded recollection. In response, Brett Knott argues that the state failed to lay the proper foundation for admission of the recording under Evid.R. 803(5). The state also poses several other alternative bases for the admission of the recording. However, given the specificity at trial that the state used in identifying its purpose for playing the recorded statement, we conclude it would be improper to justify its admission at this late date upon another rationale. The defendant's counsel should have been apprized of the alternative bases at a time when he could have objected to their applicability. Likewise, the trial court should have been given an opportunity to evaluate an alternative means for admitting the recording. Thus, we conclude that the state cannot assert belated alternative bases to justify the recorded statements admission into evidence.
 {¶ 19} Having concluded that the court erred in allowing the jury to hear the recording of Eric Knott's conversation with Chris Wittkugle, we must now determine whether this error constituted plain error. Plain error exists only if it can be said that, but for the error, the outcome of the proceedings clearly would have been otherwise. See Jackson,92 Ohio St.3d at 438; Sanders, 92 Ohio St.3d at 245.
 {¶ 20} At trial, the state sought to admit the recording into evidence. The trial court, however, denied the state's request. The state then proffered the recording for the record. Thus, the record on appeal contains a copy of the recording played to the jury. However, there is no transcript of the recording in the record. In April 2004, Brett Knott's appellate counsel filed a motion asking this court to supplement the record with a transcript of the audio recording. We granted the motion and ordered counsel to prepare a praecipe to the court reporter. Our record contains no indication that appellate counsel complied with this order. To date, no transcript of the recording has been filed with this court. However, our inability to adequately review the recording does not hamper our plain error analysis. Even without the recording, we are able to determine from the remaining evidence whether the state presented sufficient evidence of Brett Knott's guilt.
 {¶ 21} Russ Abrams testified that in the early morning hours of September 18, 2001, Eric Knott and Brian Knott knocked on his door and asked him to help them move a body. After looking at the bodies of David and Ruth Malcolm, the three men went to the Knott residence. Abrams testified that Eric Knott, who had "blood and stuff" on his clothes, told Brett Knott that he had killed the Malcolms. The four men then discussed what to do with Eric Knott's clothing. According to Abrams, they discussed burning the clothes or taking the clothes and getting rid of them. Specifically, Abrams testified that they discussed getting rid of the clothing in Columbus. After the discussion, Eric Knott changed out of the clothes and put the clothes and some shell casings in a white bag. When asked what was done with the bag, Abrams responded: "As far as I know Mr. Knott's was suppose to take it somewhere and get rid of it." However, Abrams testified that he did not see the bag leave the house because he left before Brett Knott. On cross, Abrams indicated that he did not know where exactly the clothes were being taken, just that they were going to Columbus. Abrams identified the clothing shown to him at trial as the clothing Eric wore that day.
 {¶ 22} Deputy Steven Sedwick, an investigator with the Athens County Sheriff's Office, also testified at trial. Deputy Sedwick indicated that while investigating the murders of David and Ruth Malcolm, he learned that Brett Knott might have disposed of Eric Knott's clothing at the construction firm where he worked. When Deputy Sedwick interviewed Brett Knott, however, Knott denied disposing of his son's clothing. On October 5, 2001, Sheriff's deputies went to Columbus to search the construction firm's dumpster. During the search, Sheriff's deputies discovered a white plastic grocery bag containing clothing. Deputy Sedwick testified that the plastic bag contained a pair of blue jeans "covered with blood", a black t-shirt, and a flannel shirt. In addition to the bag of clothing, Sheriff's deputies discovered a bag of medical waste. The remaining contents of the dumpster consisted of construction waste such as wood, broken glass, and plastic pipes. Deputy Sedwick testified that the deputies did not find any "household type trash" in the dumpster. Furthermore, he testified that the deputies did not find anything in the dumpster with the Knotts' name on it.
 {¶ 23} At trial, Brett Knott testified in his own defense. He testified that he often disposed of big items, such as boxes, glass, windows, etc., at work. Furthermore, he testified that he occasionally disposed of "a few bags of garbage." Knott indicated that on September 18, 2001, he disposed of "a big Tupperware box" containing glass and wood. Knott indicated, however, that he did not look through the box to see what it contained. According to Knott, the box had been sitting on his porch the night before. Knott indicated that this was not unusual as family members often dropped off trash for him to dispose of at work. In fact, Brett Knott's father-in-law, Jerry Dickson, testified that the week of the murders he dropped off some glass for Knott to dispose of. Mr. Dickson testified that he put the glass in a box that was sitting on Brett Knott's front porch.
 {¶ 24} Brett Knott testified at trial that he did not dispose of any evidence. When shown the clothing found in the dumpster, Knott testified that he had never seen the clothing before. Eric Knott also testified that he did not give his father any clothing to get rid of. He indicated that the clothing had been put in the trash without Brett Knott's knowledge. When asked who put the clothing there, Eric Knott responded: "I believe Russ done it."
 {¶ 25} Our review indicates that even without the recording, the state presented ample evidence of Brett Knott's guilt. Abrams testified that he, Eric Knott, Brian Knott, and Brett Knott discussed disposing of Eric's clothing in Columbus. According to Abrams, Brett Knott was supposed to get rid of the clothing somewhere in Columbus. Deputy Sedwick testified that Sheriff's deputies found Eric Knott's clothing at Brett Knott's workplace in Columbus. At trial, Brett Knott attempted to establish that someone else had put the clothing in the box of trash without his knowledge. He testified that the day of the murders he threw a "big" box of trash in the dumpster without looking through it. However, Deputy Sedwick testified that Sheriff's deputies did not find a box near the bag of clothing. He testified that the bag of clothing was lying by itself. Given the evidence against Brett Knott, we cannot say that the outcome of the trial clearly would have been different had the jury not heard the recording. Again, our review reveals that even without the recording the state presented ample evidence of Brett Knott's guilt. Thus, the court's error does not constitute plain error.
 {¶ 26} Brett Knott also argues that his counsel was ineffective for failing to object to the introduction of Eric Knott's taped conversation. Knott notes that his counsel objected to the introduction of the recording, but failed to state the specific grounds for his objection. Knott argues that trial counsel should have objected to the recording being played to the jury under the guise of refreshing Eric Knott's recollection.
 {¶ 27} Reversal of a conviction for ineffective assistance of counsel requires that the defendant show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. State v. Smith, 89 Ohio St.3d 323, 327,2000-Ohio-166, 731 N.E.2d 645, citing Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; Statev. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. Bradley. Moreover, the defendant must show that there exists a reasonable probability that, were it not for counsel's errors, the results of the trial would have been different. State v. White, 82 Ohio St.3d 16,23, 1998-Ohio-363, 693 N.E.2d 772. If one component of theStrickland test disposes of an ineffective assistance of counsel claim, it is not necessary to address both components.Strickland; Bradley.
 {¶ 28} Our review indicates that counsel objected to the admission of the recording on hearsay grounds. The state, however, responded that it was only using the recording to refresh Eric Knott's recollection. Thus, the court overruled counsel's objection but noted a continuing objection for the record. Following the court's ruling, the state proceeded to play the recording for the witness in the jury's presence. The record reveals that trial counsel failed to object to the state's playing the recording in the presence of the jury.
 {¶ 29} As noted above, it was error for the state to refresh the witness's memory by playing the recording in the jury's presence. See, generally, Ballew, 76 Ohio St.3d at 254. Thus, counsel should have objected when the state began to play the recording. Specifically, counsel should have asked that the recording be played for Eric Knott outside the presence of the jury. This failure to object when the state played the recording in front of the jury constituted deficient performance. However, Brett Knott did not suffer prejudice as a result of counsel's deficient performance. We have found that even without the recording, the state presented ample evidence of Brett Knott's guilt. Thus, it is unlikely that the outcome of the trial would have been different had counsel objected to the introduction of the recording. Accordingly, we conclude that Brett Knott's first two assignments of error lack merit.
 {¶ 30} Because Brett Knott's fourth and fifth assignments of error are also related to his convictions, we will address them next. Moreover, we will address them together since they are interrelated. Here, Knott argues that the court erred by failing to give a jury instruction on co-conspirator testimony. Additionally, Knott argues that his counsel was ineffective for failing to object to the lack of a jury instruction on co-conspirator testimony.
 {¶ 31} The record indicates that trial counsel did not request a jury instruction on co-conspirator testimony. Nor did counsel object to the court's failure to give such an instruction. Accordingly, reversal is appropriate only if the court's failure to give an instruction on co-conspirator testimony constituted plain error. See State v. Underwood
(1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus. As already noted, plain error should not be invoked unless it can be said that, but for the error, the outcome of the proceedings would clearly have been otherwise. See Jackson, 92 Ohio St.3d at 438;Sanders, 92 Ohio St.3d 245.
 {¶ 32} R.C. 2923.01(H)(2) dictates when a jury instruction on co-conspirator testimony is required. It states: "If a person with whom the defendant has allegedly conspired testifies against the defendant in a case in which the defendant is charged with conspiracy and if the testimony is supported by other evidence, the court, when it charges the jury, shall state substantially the following: `The testimony of an accomplice that is supported by other evidence does not become inadmissible because of the accomplice's complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect the witness' credibility and made the witness' testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and determine its quality and worth or its lack of quality and worth.'" R.C. 2923.01(H)(2).
 {¶ 33} The plain language of the statute indicates that a jury instruction on co-conspirator testimony is only appropriate when an alleged co-conspirator "testifies against the defendantin a case in which the defendant is charged with conspiracy
* * *." (Emphasis added.) R.C. 2923.01(H)(2). Thus, R.C.2923.01(H)(2) only applies to defendants charged with conspiracy. See State v. Leonard, Lucas App. No. L-01-1420, 2003-Ohio-3100, fn.1. Because the state did not charge Knott with conspiracy, R.C. 2923.01(H)(2) is inapplicable. Consequently, the court did not err in failing to give an instruction on co-conspirator testimony.
 {¶ 34} Brett Knott also argues that his counsel was ineffective for failing to object to the lack of a jury instruction on co-conspirator testimony. In order to prove the ineffective assistance of counsel, a criminal defendant must show (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. SeeStrickland, 466 U.S. at 687; Bradley, 42 Ohio St.3d 136, paragraph two of the syllabus. Counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel. See State v. Hill (1996), 75 Ohio St.3d 195, 211,661 N.E.2d 1068; State v. Close, Washington App. No. 03CA30, 2004-Ohio-1764, ¶ 34.
 {¶ 35} As noted above, a jury instruction on co-conspirator testimony would have been inappropriate since the present case did not involve a charge of conspiracy. See R.C. 2923.01(H)(2). Therefore, any request for an instruction or objection to the lack of an instruction would have been fruitless. Because counsel is not required to raise meritless issues, counsel did not act deficiently by failing to object to the absence of an instruction on co-conspirator testimony. Accordingly, we conclude that Brett Knott's fourth and fifth assignments of error lack merit.
 {¶ 36} In his third assignment of error, Brett Knott contends the court erred in sentencing him because the court failed to make the necessary findings for imposing consecutive sentences. Additionally, he argues that the record does not support the imposition of consecutive sentences.
 {¶ 37} A defendant has an appeal of right where the sentence is contrary to law. R.C. 2953.08(A)(4). We may not reverse a sentence unless we find by clear and convincing evidence that the sentence is not supported by the record or that it is contrary to law. R.C. 2953.08(G)(2). See, also, State v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605. In this context we do not substitute our judgment for that of the trial court nor do we simply defer to its discretion. State v. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806. Rather, we will look to the record to determine whether the sentencing court (1) considered the statutory factors; (2) made the required findings; (3) relied on substantial evidence in the record to support those findings; and (4) properly applied the statutory guidelines. See State v.Dunwoody (Aug. 5, 1998), Meigs App. No. 97CA11, citing Griffin 
Katz, Ohio Felony Sentencing Law (1998 Ed.), Section 9.16.
 {¶ 38} Generally, trial courts in Ohio must impose concurrent prison sentences. R.C. 2929.41(A). However, a court may impose consecutive sentences under R.C. 2929.14(E)(4) "* * * if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offenders conduct and to the danger the offender poses to the public, and if the court also finds any of the following: * * * (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct. * * *."
 {¶ 39} The inquiry under R.C. 2929.14(E)(4) is a "tripartite procedure." State v. Haugh (Jan. 24, 2000), Washington App. No. 99CA28. First, the sentencing court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger he poses to the public. Finally, the court must find the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c). See State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165,793 N.E.2d 473, ¶ 13; State v. Moore, 142 Ohio App.3d 593, 597,2001-Ohio-2376, 756 N.E.2d 686; State v. Martin,140 Ohio App.3d 326, 334, 2000-Ohio-1942, 747 N.E.2d 318.
 {¶ 40} In addition to making the required findings, the court must also comply with R.C. 2929.19(B)(2)(c), which requires the sentencing court to give its reasons for imposing consecutive sentences. See State v. Jones, 93 Ohio St.3d 391,2001-Ohio-1341, 754 N.E.2d 1252. The trial court must make the statutorily required findings and give the reasons supporting those findings at the sentencing hearing. R.C. 2929.19(B)(2)(c);State v. Comer, 99 Ohio St.3d 463, paragraph one of the syllabus. Moreover, the court should "clearly align each rationale with the specific finding to support its decision to impose consecutive sentences." Comer, 99 Ohio St.3d at 468. See, also, State v. Brice (March 29, 2000), Lawrence App. No. 98CA24.
 {¶ 41} Our review of the sentencing transcript indicates that the court faid to make the statutorily required findings before imposing consecutive sentences. Specifically, the transcript reveals that the court failed to make the first and second findings. In order to impose consecutive sentences, the court must first find that consecutive sentences are necessary to protect the public or to punish the offender. See R.C.2929.14(E)(4). Here, the court failed to make an explicit finding as to this factor. Although some of the court's statements seem to suggest that the court believed consecutive sentences are necessary to punish Brett Knott, the court never made a finding to that effect. The record also reveals that the court failed to make the second required finding. In order to impose consecutive sentences, the court must also find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public. See R.C. 2929.14(E)(4). As indicated by the use of the word "and", this finding requires an inquiry into both prongs. See State v.Mosher, Athens 02CA49, 2003-Ohio-4439, ¶ 13; State v.Littlefield, Washington App. No. 02CA19, 2003-Ohio-863, ¶ 16. Here, the sentencing court found that consecutive sentences are not disproportionate to the seriousness of Brett Knott's conduct. However, the court failed to address the second prong of the proportionality analysis. Specifically, the court failed to find that consecutive sentences are not disproportionate to the danger Brett Knott poses to the public. Because the court failed to make the findings required by R.C. 2929.14(E)(4), we conclude the imposition of consecutive sentences was inappropriate. Accordingly, we vacate the consecutive sentences and remand this cause for resentencing.
Judgment affirmed in part, reversed in part, and cause remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that the Appellant and Appellee split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
IF A stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.