[Cite as *State v. Allen*, 2017-Ohio-6878.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 16CA3538 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| MATTHEW S. ALLEN, | : | RELEASED: 7/12/2017 |
| Defendant-Appellant. | : | |

APPEARANCES:

Timothy Young, Ohio Public Defender, and Terrence K. Scott, Ohio Assistant Public Defender, Columbus, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Harsha, J.

{¶1} A jury convicted Matthew S. Allen of felonious assault, aggravated robbery, theft and tampering with evidence in connection with his assault on an off-duty officer at a private quarry.

{¶2} Initially Allen asserts that the trial court erred in admitting recent posts from his Facebook page that stated he and his friends were trespassing in an area that was not accessible to the public, and separate posts a few hours before the crimes stating they were at a quarry, and that he would assault any police officer trying to stop them from swimming there.

{¶3} Allen primarily claims that the trial court erred in admitting these Facebook posts into evidence because they constitute impermissible other-acts evidence. We reject his claim because: (1) he forfeited all but plain error by failing to raise this specific objection below; (2) he does not argue plain error on appeal; and (3) he has not

established error, much less plain error.  The latter posts were admissible to establish that he knew that the victim was a police officer and to rebut his claim that he would have acted differently had he known that fact.  Moreover, the outcome of the trial would not have clearly been otherwise without the evidence.

{¶4}  Allen also claims that the trial court erred in admitting these Facebook posts because their probative value is substantially outweighed by their prejudicial effect.  The trial court did not abuse its broad discretion in concluding otherwise, particularly where Allen did not claim a prejudicial effect below.  Instead, he argued that the danger of unfair prejudice arose because the posts were "nothing more than unauthenticated, irrelevant hearsay statements which serve no probative value."  But he does not claim that the posts are unauthenticated, irrelevant, or hearsay now.  We overrule Allen's first assignment of error.

{¶5}  Next Allen contends that his conviction for felonious assault was against the manifest weight of the evidence because the state offered no substantive evidence to rebut his showing of self-defense.  We reject his contention because it is based on an erroneous premise; when a defendant claims an affirmative defense like self-defense, the state need not produce rebuttal evidence to defeat it.  Because the burden of proof lies with the defendant, the state need not introduce anything when the defendant fails to carry that burden.

{¶6}  After considering the evidence we conclude that the jury did not clearly lose its way or create a manifest miscarriage of justice by rejecting Allen's claim of self-defense.  Based upon the evidence, the jury could reasonably conclude that Allen was at fault for creating the violent situation by not complying with the law enforcement

officer's commands and instead punching him in the face; and likewise the jury was free to believe that Allen did not have a bona fide belief that he was in imminent danger of death or bodily harm so that his only means of escape was the use of force.   The jury did not credit his claim of self-defense, as was their prerogative.  We overrule his second assignment of error and affirm his convictions.

## I. FACTS

{¶7}    The Ross County Grand Jury returned an indictment charging Matthew S. Allen with two counts of felonious assault, one count of aggravated robbery, and one count of tampering with evidence.  Allen entered a plea of not guilty to the charges, and the trial court appointed counsel for him.

## A.  Motion in Limine

{¶8}    Prior to trial Allen filed a motion in limine to prevent the state from introducing or referencing Facebook postings he allegedly made concerning his intent to swim at a private quarry and his intent to assault any officer who tried to stop people from swimming there.  Allen claimed that these postings were inadmissible because they were:  (1) not relevant to the case as none of the charges required premeditation as an element of the offense; (2) not authentic because several individuals had access to his Facebook account; (3) hearsay evidence that failed to fit within an exception; and (4) "nothing more than unauthenticated, irrelevant hearsay statements which serve no probative value" so that their danger of unfair prejudice substantially outweighed any probative value.

{¶9}    At the hearing on Allen's motion the state presented the unrebutted testimony of Ross County Sheriff's Detective Tony Wheaton.  The trial court issued a

decision overruling the majority of his motion, but reserving a decision on the Evid.R. 403 unfair prejudice issue.  The court determined that Allen's Facebook postings were relevant to his identity and presence at the scene at the time of the offenses, as well as to his intent to assault a law enforcement officer and to take his badge.

### B.  Jury Trial

{¶10}  The case proceeded to a jury trial where the following evidence was admitted.  On the date of the crimes Ronnie Johnson was a duly commissioned Ross County Deputy Sheriff and auxiliary Greenfield Police Officer.  Rucker's Stone Quarry is a private quarry in Ross County owned by the Village of Greenfield, which uses the property as a training center.  It is not open to the public, but members of the police department and their spouses and significant others are allowed to use it for recreational purposes like camping and fishing.

{¶11}  Deputy Sheriff Johnson testified that at approximately 8:00 p.m. on May 7, 2015, he went to the quarry with his girlfriend, Cynthia Speakman, to fish.  He wore casual clothes:  a gray Army t-shirt, a pair of camouflage cargo shorts, a hat, and tennis shoes.  He also had a Colt Agent .38 handgun, his personal firearm, as his off-duty weapon.  He had the gun in a holster on his right hip underneath his t-shirt, and he had handcuffs in his left rear pocket.  He had his sheriff's deputy badge on his belt next to his firearm and left his police badge in his truck when they parked in the quarry.  At the time he and Speakman arrived at the quarry, it was still light outside.  Johnson had authority as an off-duty officer to make arrests in Ross County and Greenfield.

{¶12}  When Johnson and Speakman walked down to the water, they noticed Allen, his girlfriend, Kayla Lord, and his brother, Todd, on the other side of the water

along the east rock wall.  Speakman telephoned her son, a Greenfield Police Officer, to let him know that there were people trespassing at the quarry.  Johnson testified that when he got about 50 feet away from them, he got their attention, held his badge up, identified himself as a Ross County Deputy Sheriff, and told them that they were trespassing on Greenfield Police Department property and that they would have to leave.  Johnson also noticed a fire and asked them if they started it; after they said they had not, he asked them for help to put it out.  Johnson went back to his truck to get a bucket to help put out the fire and retrieved his police badge, which he put on his belt next to his sheriff's deputy badge.  Allen, his brother, and his girlfriend came over to help put out the fire.

{¶13}  Johnson testified that he asked the three trespassers to identify themselves so that he could put them on a list of people who had been warned about trespassing at the quarry so that they would be charged if they returned.  Johnson again displayed his badge and identified himself as a Ross County Deputy Sheriff.  Lord complied, but Allen became agitated and told Johnson that he didn't "give a fuck."  Johnson then told Allen he was under arrest, and he reached for his handcuffs to put on Allen.

{¶14}  According to Johnson, Allen then retreated, became more belligerent, stated that he was not going to jail, and put his hands up in a fighting stance.  Johnson told Allen that he did not want to have to fight him and reiterated that he was a law enforcement officer and that if Allen fought him, it would be a felony.  Allen repeated that he didn't give a fuck, and he punched Allen on the left side of his mouth.  Johnson yelled at Allen to get on the ground, but Allen charged him and as they were struggling,

Todd hit Johnson in his head and grabbed his arms. One of the two brothers yelled for the other to get Johnson's gun. Allen took Johnson's gun out of his holster and struck him in his right eye and head, rendering him unconscious. When Johnson came to shortly thereafter, he noticed his gun and handcuffs were gone and he saw the three trespassers running away. Speakman called 911.

{¶15} Johnson testified that when the police arrived, he was taken to a nearby park where officers had detained several people, and he identified Todd as one of the trespassers who attacked him. An emergency squad took Johnson to a local hospital for treatment. As a result of his injuries sustained in the attack, Deputy Sheriff Johnson was off work for about a month.

{¶16} Other witnesses corroborated much of Johnson's testimony. Speakman testified that when she and Johnson arrived at the quarry, Johnson indicated to Allen and the two other individuals that he was a law enforcement officer, held up his badges, and told them that they were trespassing on private property. She further confirmed that when the three got closer to them, Johnson again identified himself to the three as a law enforcement officer, that he asked for their names to be put on a list, and that Allen refused to comply and told Johnson that he wasn't going to arrest him. After Speakman saw Allen get into a fighting stance and begin struggling with Johnson, she ran back to the truck to retrieve her cell phone and heard someone yell to get Johnson's gun. When she returned, Johnson was unconscious and the three trespassers were running away.

{¶17} Lord, who was dating Allen at the time after meeting through Facebook, testified that for three days in early May 2015, she stayed at Allen's house in Hillsboro

with Allen and his brother. Lord further testified that on May 6, 2015, she, Allen, and Todd went on a trip to an abandoned park named Seven Caves, and Allen posted several pictures of the park on his Facebook account, including his comment stating that it was not accessible. The next day, Allen took a picture of Lord washing his truck and posted it on Facebook. Allen renewed his objection to this social media evidence "on the same basis as was set forth in the memorandum" he filed in support of his motion in limine, but the trial court overruled his objection.

{¶18} Lord confirmed that on May 7, 2015, she, Allen, and Todd were diving and swimming at the private quarry when Deputy Sheriff Johnson and Speakman arrived. She indicated Johnson identified himself as a law enforcement officer, but Allen became aggressive towards Johnson, and during a struggle that ensued, she saw the officer knocked out on the ground with Allen standing over him. She ran with Allen to a nearby town, Allen told her he had stolen Johnson's gun, and he hid it. They then hid under a trailer until police spotted and arrested them. According to Highland County Deputy Sheriff Mike Gaines, he located Johnson's handcuffs a few feet away from Allen and Lord and Allen ultimately told him where he had hidden Johnson's gun.

{¶19} Ross County Deputy Sheriff Tony Wheaton testified that he was familiar with Facebook, he maintained a Facebook account, and that he often used Facebook as a law enforcement investigative tool because criminals have a tendency to post about their criminal activities. During direct examination Wheaton testified over Allen's continuing objection about public postings on Allen's Facebook account, which Wheaton obtained during his criminal investigation. One of the exhibits had been previously referenced in Lord's testimony and provided:

May 6 at 4:56 pm

Seven caves, yep its "not accessible" to public and closed off… but let's be honest, that just makes it more fun Todd Allen Kayla Lord and yep Todd went swimming in the random cave pool

(Sic.)

**{¶20}** Deputy Sheriff Wheaton also testified about other photographs he took of Allen's Facebook postings from earlier on May 7, 2015, the date of the crimes. They included pictures Allen posted of the quarry, including the following post about Allen and his brother, Todd, jumping off the rock cliff at the quarry, and comments in which Allen threatened to assault and take away the badge of any police officer telling them they couldn't swim there:

May 7 at 3:34 pm

Hitting up greenfield rock cliff jumps! !! – with Todd Allen

Matt Akers FR [posted May 7 at 4:37 p.m.]

Matthew Allen Yep [posted May 7 at 4:59 p.m.]

Matthew Allen I'll smack him [posted May 7 at 5:03 p.m.]

Matthew Allen I smack him and take his badge then you owe dinner sis. [posted May 7 at 5:08 p.m.]

Matthew Allen Breaking news, greenfield state police officer gets assaulted and de-badge for trying to stop people from swimming [posted May 7 at 5:15 p.m.]

Matt Akers I wanna go [posted May 7 at 5:20 p.m.]

(Sic.)

**{¶21}** At the conclusion of the state's case the court overruled Allen's objections, which he made on "same basis * * * as in my Motion in Limine, stated to this Court and

asserted throughout the trial". The trial court relied on the same rationale used in its decision overruling the motion in limine.

{¶22} In his defense Allen testified and admitted that he trespassed with Lord and his brother at the quarry on the date of the crimes and that he had been trespassing at the quarry for seven years without ever seeing a no-trespassing sign or being warned by a police officer. Allen also conceded that he had posted the comment on Facebook about assaulting a Greenfield police officer and taking his badge, but said he was being funny and that he never intended to be violent. He further admitted that when Johnson arrived and confronted them at the quarry, Johnson identified himself as a police officer, but he did not show a badge.

{¶23} According to Allen when Johnson told him he was under arrest, he backed up and tried to leave because he did not know that Johnson was an actual officer. Allen testified that when Johnson pulled his gun on him, Allen blocked it and punched Johnson in his right eye. Allen claimed that he was scared for his life and had been backed up by an aggressive stranger who he did not believe was a police officer. Allen denied hitting Johnson with his gun and testified that if he had known that Johnson was a police officer, he would have obeyed his authority and reacted differently. None of the other witnesses testified that Johnson pulled a gun on Allen.

{¶24} The jury returned verdicts finding Allen guilty of one count of felonious assault, one count of robbery, and one count of tampering with evidence and not guilty of the remaining count of felonious assault. The jury further found that Johnson was a peace officer at the time of the felonious assault, but that Allen did not have a firearm on

or about his person or under his control while committing the offense. The trial court sentenced Allen to an aggregate five-year prison term.

## II. ASSIGNMENTS OF ERROR

{¶25} Allen assigns the following errors for our review:

I. THE TRIAL COURT ERRED WHEN IT ADMITTED PREJUDICIAL EVIDENCE AND DENIED MATTHEW ALLEN'S RIGHT TO DUE PROCESS AND A FAIR TRIAL. OHIO EVIDENCE RULES 403(A), 404(A) AND (B); R.C. 2945.59; FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

II. MATTHEW ALLEN WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN THE JURY FOUND HIM GUILTY OF FELONIOUS ASSAULT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTION 16, OHIO CONSTITUTION.

## III. LAW AND ANALYSIS

### A. Other-Acts Evidence

{¶26} In his first assignment of error Allen asserts that the trial court erred when it admitted prejudicial evidence. Allen primarily claims that the trial court erred in admitting his Facebook posts into evidence because they constitute impermissible other-acts evidence.

{¶27} We reject Allen's claim for several reasons. First, although he objected to the admission of these Facebook posts at trial and proffered several reasons for doing so, he never raised the specific objection below that he raises now, i.e. that they constituted impermissible other-acts evidence. Allen thus forfeited all but plain error for this newly raised contention on appeal. *See State v. Lawson*, 4th Dist. Highland No. 14CA5, 2015-Ohio-189, ¶ 14, quoting *State v. Knott*, 4th Dist. Athens No. 03CA30,

2004-Ohio-5745, ¶ 9, and citing Evid.R. 103(A)(1) (" 'Because counsel's objection did not apprise the [trial] court of this specific argument, we believe a plain error analysis of the issue is appropriate' "); *see also* Painter and Pollis, *Ohio Appellate Practice*, § 1:36 (2016) ("An objection to the admission of evidence on one ground * * * does not, for purposes of appeal, preserve objections to the evidence on other grounds").

**{¶28}** Second, because Allen does not assert plain error on appeal, we need not consider it. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17-20 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *State v. Gannon*, 4th Dist. Lawrence No. 15CA16, 2016-Ohio-1007, ¶ 31 (we need not consider plain error when the appellant does not raise it).

**{¶29}** Third, even if we were to consider plain error, Allen has not established it. To prevail on a claim of plain error Allen must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 69.

**{¶30}** In general, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith." Evid.R. 404(B). "It may, however, be admissible * * * [to prove] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

**{¶31}** One of the charges that Allen faced was aggravated robbery in violation of R.C. 2911.01(B), which prohibits persons, without privilege to do so, from knowingly removing or attempting to remove a deadly weapon from the person of a law enforcement officer when both of the following apply: "(1) The law enforcement officer,

at the time of the removal * * * is acting within the course and scope of the officer's duties; (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer."

**{¶32}** Allen argued there was insufficient evidence that he knew or had reasonable cause to know that Johnson was a law enforcement officer. He also testified that if he had known that Johnson was an officer, he would have complied with his orders instead of assaulting and robbing him. The Facebook posts on Allen's personal account from May 7, 2015 were consequently admissible to prove that he knew that Johnson was a law enforcement officer and to rebut his claim that if he had known he was an officer, he would have complied with Johnson's orders, i.e., that he was mistaken about Johnson's status as an officer. Only a few hours before he assaulted and robbed Johnson he threatened on his Facebook page to do just that—to assault any officer that tried to stop him from swimming in the private quarry and to rob the officer (by taking away the officer's badge).

**{¶33}** In addition both the May 7, 2015 and the previous day's Facebook posts were admissible to prove the identity of the perpetrator—that Allen committed the crimes. Notwithstanding Allen's claim on appeal that identity was not at issue because he conceded he hit Johnson and took his gun, "need is irrelevant in determining the validity of an Evid.R. 404(B) objection." *See State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 24 (rejecting appellant's claim that other-acts evidence was inadmissible because it was unnecessary to prove identity).

**{¶34}** Finally, even assuming the trial court erred in admitting Allen's Facebook posts, Allen has not proven that the outcome of his trial clearly would have been

otherwise without them.  The evidence introduced at trial included Johnson's testimony, which was corroborated for most material facts by Speakman's, Lord's, and Deputy Sheriff Wheaton's testimony, that:  (1) Johnson identified himself as a law enforcement officer to Allen; (2) Allen assaulted him by punching him in his face; (3) Allen stole his gun and handcuffs; and (4) Allen hid the gun so that the officers could not find it.

**{¶35}**  Next Allen claims that the trial court erred in allowing the Facebook evidence because its probative value was substantially outweighed by its prejudicial effect.  *See* Evid.R. 403(A) ("Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury"); 1 Giannelli, *Baldwin's Oh. Prac. Ev.*, § 404.14 (3d Ed.2016) ("Even if the other-acts evidence is offered to prove a material element, the decision to admit this evidence is subject to Rule 403).

**{¶36}**  The trial court did not abuse its broad discretion in concluding otherwise. This evidence's probative value—detailing what Allen intended to do to a police officer who confronted him about swimming in the private quarry—was high given its posting a few hours before the incident, and the accuracy with which it described his future conduct.  Its prejudicial effect did not substantially outweigh this probative value.  *See State v. Norman*, 4th Dist. Ross Nos. 08CA3059 and 08CA3066, 2009-Ohio-5458, ¶ 54, quoting *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23 ("the rules of evidence do not attempt to bar all prejudicial evidence-to do so would make reaching any result extremely difficult.  Rather, only evidence that is *unfairly* prejudicial is excludable" [emphasis sic.]).

**{¶37}** In fact, when Allen raised this claim below, he did not assert—as he does now—any unfair prejudice based on his claim of improper other-act evidence. Instead, his argument of unfair prejudice below was based on his claim that the Facebook posts were "unauthenticated, irrelevant hearsay statements which serve no probative value." He has abandoned these claims on appeal. In fact, at trial Allen eventually testified that he did make the contested posts.

**{¶38}** Allen has therefore failed to establish any error on the part of the trial court in admitting his Facebook posts. We overrule his first assignment of error.

### B. Manifest Weight of the Evidence: Felonious Assault

**{¶39}** In his second assignment of error Allen contends that his conviction for felonious assault was against the manifest weight of the evidence. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6254, 960 N.E.2d 955, ¶ 119.

**{¶40}** However, we are reminded that generally the weight and credibility of evidence are to be determined by the trier of fact. *See State v. Kirkland*, 140 Ohio St.3d 73, 15 N.E.3d 818, 2014-Ohio-1966, at ¶ 132. " 'A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' " *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17,

quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. We defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.

**{¶41}** Allen argues that his conviction for felonious assault was against the manifest weight of the evidence because the state offered no substantive evidence to rebut his showing of self-defense. We reject this argument because it is based on an erroneous premise; when a defendant claims an affirmative defense like self-defense, the state need not produce rebuttal evidence to defeat it. *See State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 29 ("When a defendant presents an affirmative defense there is no mandatory duty that requires the state to produce rebuttal evidence").

**{¶42}** Rather, "[t]o establish self-defense, a defendant must establish, by a preponderance of the evidence, the following three circumstances: ' "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty of retreat or avoid the danger." ' " *State v. Waller*, 4th Dist. Scioto Nos. 15CA3683 and 15CA3684, 2016-Ohio-3077, ¶ 23, quoting *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1085, ¶ 36, quoting *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997).

**{¶43}** After considering the evidence we conclude that the jury did not clearly lose its way or create a manifest miscarriage of justice by rejecting Allen's claim of self-

defense to the felonious-assault charge. The evidence in this case could reasonably lead a jury to conclude that: (1) Allen was at fault for creating the violent situation by failing to comply with Deputy Sheriff Johnson's lawful commands and instead punching him in his face and stealing his gun and handcuffs; and (2) Allen did not have a bona fide belief that he was in imminent danger of death or bodily harm—he could have diffused the situation by either giving his name and address to Johnson or allowing himself to be arrested for trespassing. Because Allen failed to carry his burden of proof, the state had no duty to present rebuttal evidence.

{¶44} Allen cites his own testimony that Johnson escalated the situation by drawing his gun, but no other witness corroborated this testimony. The jury was free to discredit this testimony, particularly when a reasonable person who claimed to have been assaulted by a person impersonating a police officer would have attempted to contact the police rather than run from them and attempt to hide a gun stolen from the person he claimed impersonated a police officer. The jury's verdict was not against the manifest weight of the evidence. We overrule Allen's second assignment of error.

## IV. CONCLUSION

{¶45} Allen has failed to establish that the trial court committed any reversible error. Having overruled Allen's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J.: Concurs in Judgment and Opinion.
Hoover, J.: Concurs in Judgment Only.

For the Court

BY: _____
        William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**